## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| THE CHARTER OAK FIRE INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CIV. ACT. NO. 1:19-cv-117-TFM-B |
| THE CITY OF FAIRHOPE, ALABAMA, *et al.* ) ) ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

Now pending before the Court is a Motion for Summary Judgment filed by the Plaintiff/Counterclaim Defendant (Doc. 21, filed 10/24/19) and a Motion for Partial Summary Judgment filed by the Defendant/Counterclaimant (Doc. 24, filed 10/24/19). The Court has reviewed all the written pleadings, motions, responses, and replies, and other filings in the case, and the relevant law. The parties have not requested a hearing, and the Court finds a hearing is unnecessary in this instance. Accordingly, the motions are ripe for review. For the reasons discussed below, the Court **GRANTS** summary judgment in favor of Plaintiff/Counterclaim Defendant as to duty to defend and indemnification and **DENIES** the countermotion by Defendant/Counterclaimant.

### I.    JURISDICTION AND VENUE

The parties assert this action pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332. The Court previously determined that diversity jurisdiction exists in this case. *See* Doc. 3. Neither party contests venue and adequate support exists to support that venue is proper.

## II.     BACKGROUND AND PROCEDURAL HISTORY

This case centers on a series of insurance policies issued by the plaintiff, The Charter Oak Fire Insurance Company ("Charter Oak"), to the City of Fairhope, Alabama ("Fairhope"), a defendant.  Specifically, the crux of the case is whether those policies create for Charter Oak a duty to defend and indemnify Fairhope in a still-pending state court action filed against Fairhope in Baldwin County Circuit Court in 2013 by developer Charles K. Breland, Jr., and Breland Corporation (collectively, "Breland").  *See Charles K. Breland, Jr., et al. v. City of Fairhope*, No. 05-CV-2013-901096.00 (28th Jud. Cir. of Ala.) ("the *Breland* action").

### A.    The *Breland* action

The state court case underlying this lawsuit concerns Breland's attempts to develop approximately 65 acres of land purchased in 1999 in the Battles Wharf community outside Fairhope's city limits but within its police jurisdiction.  Doc. 23-2 ¶ 5.  In his first amended complaint, filed in the Circuit Court of Baldwin County on August 13, 2013, Breland asserts that he initiated a permitting process in 2001 with the U.S. Army Corps of Engineers (the "Corps") and the Alabama Department of Environmental Management ("ADEM") to fill about 10 acres of wetlands on the property.  *Id*. ¶ 6.  Fairhope lodged written protests with the Corps during the application's public comment period.  *Id*. ¶ 7.  Nevertheless, in 2002 Breland received a permit from the Corps authorizing him to fill approximately 10.5 acres of wetlands on his property, and a corresponding water quality certification permit from ADEM.  *Id*. ¶¶ 7-8  As part of the permitting requirements, Breland purchased mitigation credits in 2003 for $144,000 and conveyed 39 acres of property to an organization for conservation in 2007.  *Id*. ¶¶ 9-11.

Breland began to fill the wetlands in March 2008, but Fairhope issued a stop-work order on March 27, 2008, and notified Breland that he was required to obtain a land-disturbance permit

from Fairhope in order to conduct the filling. *Id*. ¶¶ 12-13. Breland asserts that he was in compliance with existing city ordinances in March 2008, nevertheless, he applied for a land-disturbance permit on April 15, 2008. *Id*. ¶¶ 15-20. Breland asserts that Fairhope intentionally shelved his permit application and, instead, enacted Ordinance 1363 on June 9, 2008, imposing a moratorium on the issuance of all land-disturbance permits. *Id*. ¶¶ 21-23. Breland further asserts that, on October 13, 2008, Fairhope enacted Ordinance 1370, establishing a comprehensive plan for wetlands-filling activities that required, among other things, a permit from Fairhope to fill any wetlands that was applicable both inside Fairhope's municipal boundaries and within the city's permitting jurisdiction. *Id*. ¶ 24. Breland alleges that Fairhope drafted and enacted these new ordinances in a "targeted attempt" to prevent him from filling the wetlands on his property. *Id*. ¶ 25. Breland negotiated with Fairhope to purchase his property from 2008 to 2011, but negotiations stalled when "it became clear to Breland that the City had no real intention of purchasing the Property." *Id*. ¶¶ 27-28. Breland resumed filling the wetlands in November 2011. *Id*. ¶ 29. Fairhope again issued a stop-work order, and also issued a criminal citation and instructed Breland to apply for a land-disturbance permit. *Id*. ¶ 29. On January 10, 2013, Breland notified Fairhope of his claims against the city. *Id*. ¶ 37.

Breland alleges six (6) causes of action in his 2013 amended complaint. In Count One, Breland seeks a temporary restraining order and preliminary injunction to enable him to fill the wetlands prior to the expiration of his Corps permit. Counts Two, Three, Four, and Six seek various declaratory judgments in relation to Breland's entitlement to fill the property and Fairhope's actions preventing him from doing so. Count Five alleges negligence and seeks money damages.

**B.**     **The present action**

Fairhope initiated this action against Charter Oak in Baldwin County Circuit Court on January 7, 2019, seeking a declaratory judgment under Alabama's Declaratory Judgment Act, ALA. CODE §§ 6-6-220 through 232, that Charter Oak owes duties to defend and indemnify Fairhope in the *Breland* action (Count One).[1]  The Complaint also alleges that Charter Oak breached an enhanced duty of good faith that it owed to Fairhope under Alabama common law (Count Two).  Specifically, as to Count Two, Fairhope alleges that Charter Oak elected to defend Fairhope in the *Breland* action pursuant to a reservation of rights, thereby incurring an enhanced duty of good faith to Fairhope.  Fairhope alleges that Charter Oak breached that duty by (1) failing to conduct a thorough investigation of the claims against the City; (2) failing to give Fairhope timely notice that Charter Oak would assert a reservation-of-rights defense; (3) failing to keep Fairhope informed of developments related to its insurance coverage; (4) acting in a manner evidencing a greater concern for its own financial gain than for Fairhope's risk; and (5) failing to bifurcate its own claims file from the coverage file and using information gleaned from its claims file in the course of defending Fairhope as a basis for denying coverage.  From Count Two, Fairhope seeks unspecified damages.  Charter Oak removed the case to federal district court on January 11, 2019.  Fairhope moved to remand the case to state court on January 14, 2019.  19-cv-9 Docket, Doc. 5.  This Court denied Fairhope's motion to remand on July 1, 2019.  Doc. 3.

On October 24, 2018, before Fairhope initiated this action in state court, Charter Oak filed a Chapter 11 adversary proceeding in the U.S. Bankruptcy Court for the Southern District of Alabama seeking a declaration of its rights and obligations, if any, under the insurance policies

---

[1] Fairhope's action initially was docketed in this Court as Civ. Act. No. 1:19-cv-9-TFM-N ("19-cv-9 Docket").  It was subsequently transferred to this docket.

noted above. *See In re Charles K. Breland, Jr.*, No. 16-02272 (Bankr. S.D. Ala. 2016) ("Bankruptcy Case"), Doc. 2. On January 7, 2019, Charter Oak moved to withdraw the reference to bankruptcy and transfer its case to this Court. *See id.*, Doc. 1 at 4. On March 11, 2019, this Court granted Charter Oak's motion to withdraw the reference and ordered the Bankruptcy Case transferred to the U.S. District Court. *See id.*, Doc. 1 at 28. Accordingly, the Bankruptcy Case was transferred to this Court's docket and consolidated with the 19-cv-9 Docket.[2] The Court established Charter Oak's petition for declaratory judgment as the operative complaint and Fairhope's complaint—which includes an additional allegation of breach of good faith—as a counterclaim. Doc. 3. The Court stayed the claims for indemnification and breach of good faith on July 1, 2019 pending a final outcome in the underlying *Breland* action.[3]

Now, the parties have filed cross-motions for summary judgment in this consolidated case. In its motion for summary judgment (Doc. 21), Charter Oak argues that neither the Commercial General Liability ("CGL") part nor the Public Entity Management Liability ("PEML") provisions of the insurance policies issued to Fairhope provide coverage for defense against the *Breland* action. It also argues that, because the duty-to-defend issue is due to be decided in its favor, the issue of indemnity, too, is ripe for a decision in its favor despite the stay imposed by the Court. Charter Oak's motion for summary judgment does not address Fairhope's additional count of

---

[2] Charter Oak's Motion to Withdraw the Reference was docketed in this Court as Case No. 1:19-mc-4-TFM. Once the Court granted the motion, the case was transferred to the civil docket. *See* Bankruptcy Case. Charter Oak is the Plaintiff in the Bankruptcy Case, and the defendants are Fairhope, Charles K. Breland, Jr., A. Richard Maples, Jr., and Breland Corporation.

[3] Fairhope filed supplements with this Court on January 29, 2019 and April 3, 2020, disclosing that the state court, following an *ore tenus* bench trial, ruled in its favor on all counts in the *Breland* action, and that the decision was appealed to the Alabama Supreme Court. 19-cv-9 Docket, Docs. 7, 11. As the Court has received no subsequent notices from the parties, the matter appears to remain pending in the state supreme court.

breach of good faith.  In Fairhope's partial motion for summary judgment, it argues that Charter Oak has a duty to defend Fairhope in the underlying *Breland* action.  Fairhope's partial summary judgment motion does not address the issues of indemnification or breach of good faith.

### III.   STANDARD OF REVIEW

Summary judgment is proper where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A factual dispute alone is not enough to defeat a properly pleaded motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  "[T]he substantive law will identify which facts are material." *Id*. at 248, 106 S. Ct. at 2510.  At the summary judgment stage, the court does not "weigh the evidence and determine the truth of the matter," but merely "determine[s] whether there is a genuine issue for trial."  *Id*. at 249, 106 S. Ct. at 2511.

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553).  The court must view facts and draw all reasonable inferences in favor of the nonmoving party.  *Moore v. Reese*, 637 F.3d 1220, 1231 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)).

Fed. R. Civ. P. 56(e) provides that:

[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
    (1) give an opportunity to properly support or address the fact;
    (2) consider the fact undisputed for purposes of the motion;
    (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
    (4) issue any other appropriate order.

FED. R. CIV. P. 56(e).

Whether an insurer has a duty to defend its insured in proceedings initiated against the insured is determined primarily by the allegations set out in the complaint. *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005) (citing *U.S. Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985)). "The provisions of an insurance policy must be construed in light of the interpretation that ordinary [people] would place upon the language used in the policy." *Edwards Dodge, Inc. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 510 So. 2d 225, 226 (Ala. 1987) (quoting *Newman v. St. Paul Fire & Marine Ins. Co.*, 456 So. 2d 40 (Ala. 1984)). Any ambiguity in a policy is to be construed liberally in favor of the insured. *Hartford Cas. Ins. Co.*, 928 So. 2d at 1011.

"If the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Id*. at 1009. When a complaint alleges acts covered under the policy and acts not covered, the insurer has a duty to defend, at the least, the allegations covered by the policy. *Id*. at 1010 (citing *Blackburn v. Fid. & Deposit Co. of Md.*, 667 So. 2d 661, 668 (Ala. 1995)).

If the complaint against the insured alleges a covered occurrence, "the insurer owes the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not" a covered occurrence. *Id*. Additionally, "if the complaint against the insured does not,

on its face, allege a covered accident or occurrence, but the evidence proves one, then the insurer likewise owes the duty to defend." *Id*. In other words, the Court first must determine whether the allegations in the complaint state an occurrence within the meaning of the policy. If an occurrence is alleged, the inquiry ends. If it does not, the Court must determine whether the "facts which may be proved by admissible evidence state an occurrence." *Id*. at 1011 (quoting *Pac. Indem. Co. v. Run-A-Ford Co.*, 161 So. 2d 789, 795 (Ala. 1964)). An insurer owes no duty to defend where there is neither an allegation of a covered occurrence in the complaint nor evidence of one in the litigation itself. *Id*. at 1010.

### IV.   DISCUSSION AND ANALYSIS

**A.   The insurance policies**

As relevant background, Charter Oak issued the following insurance policies to Fairhope:

(1) Policy #GP09315949 running for the period January 9, 2011 to January 9, 2012;
(2) Policy #ZPP1-14P162221-12-PB for the period January 9, 2012 to January 9, 2013;
(3) Policy #ZLP-145T87598-13-PB, for the period January 9, 2013 to January 9, 2014; and
(4) Policy #ZLP-14T87598-14-PB, for the period January 9, 2014 to January 9, 2015.

The policies provide CGL coverage of up to $3,000,000 for each covered "occurrence," and PEML coverage of up to $2,000,000 per wrongful act. Doc. 11 at 109, 184.

**B.   Duty to defend**

**(1)   The CGL Part**

Under the CGL provision, the policies issued by Charter Oak to Fairhope provide, in relevant part, as follows:

> SECTION I – COVERAGES
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured

      against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply…
    b. This insurance applies to "bodily injury" and "property damage" only if:
        (1) The "bodily injury" or "property damage" is caused by an "occurrence" …;
        (2) The "bodily injury" or "property damage" occurs during the policy period; and
        (3) Prior to the policy period, no insured … and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    …

    d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured … or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
        (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
        (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
        (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Doc. 11 at 117.[4]

        Charter Oak argues, first, that the CGL coverage does not apply to the underlying *Breland* action because Breland's claimed damages were not caused by an "occurrence" as it is defined in the policies.  Charter Oak contends that an occurrence, by definition, requires that damages resulting from a given action are unforeseen, unintended, and accidental, but Breland's complaint

---

[4] The Court notes there are four (4) policies at issue, renewed annually by the parties, providing continuous coverage from January 9, 2011 to January 9, 2015.  Any differences in the insurance contracts are irrelevant for purposes of this case; the relevant language is substantially unchanged from year to year.  This opinion references the language from the initial policy that took effect in 2011.  All four (4) policies are filed on the docket at Doc. 11.

alleges that Fairhope's conduct was intentional, deliberate, purposeful, repeated, and specifically targeted to prevent Breland from filling the wetlands on his property. Fairhope argues, to the contrary, that Breland alleges negligence in his complaint against Fairhope, and allegations of negligence constitute an "occurrence" for purposes of triggering a duty to defend.

The policy defines an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general or harmful conditions." Doc. 11 at 135. As Charter Oak notes in its motion, the policy does not define "accident." Where a policy does not define a word or phrase, the Court should construe it according to its ordinary meaning. *See Lambert v. Coregis Ins. Co.,* 950 So. 2d 1156, 1161 (Ala. 2006) ("If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it.") (citations omitted).

Black's Law Dictionary defines "accident" as:

> **1.** An unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated; any unwanted or harmful event occurring suddenly, as a collision, spill, fall, or the like, irrespective of cause or blame <the accident was staged as part of an insurance scam>. **2.** *Equity practice.* An unforeseen and injurious occurrence not attributable to the victim's mistake, negligence, neglect, or misconduct; an unanticipated and untoward event that causes harm.

*Accident*, BLACK'S LAW DICTIONARY (11th ed. 2019). As Charter Oak notes, the Alabama Supreme Court has applied the definition of "accident" supplied by Black's Law Dictionary in comparable cases. *See, e.g., Hartford Cas. Ins. Co.*, 928 So. 2d at 1011 (internal quotation marks and citation omitted) (stating that the term has been "variously defined as something unforeseen, unexpected, or unusual").

In *Hartford*, the Alabama Supreme Court, reversing a lower court ruling, found an insurer had no duty to defend its insured, a bank, in a lawsuit claiming the bank had seized money and

assets in which the underlying plaintiff held an interest. *Id*. at 1011. Specifically, the plaintiff's complaint alleged that a furniture retailer defaulted on a loan issued by the bank, so the bank seized money and inventory held by the furniture retailer in order to secure its claims under the loan agreement, despite notification from the plaintiff/retailer that it held an interest in the property. The state supreme court determined that nothing in the factual averments of the complaint indicated that the bank's actions, or the consequences of its actions, were unintended or unforeseen so as to constitute an "occurrence" under the policy. *Id*. at 1012.

In that case, the plaintiff alleged negligence against the bank—specifically, that the bank "negligently, willfully, and/or wantonly breached its duty . . . in that it was aware that its wrongful possession of [the] property would result in injury" to the plaintiff. *Id*. at 1012. Nevertheless, the court determined that the negligence count "merely dangle[d] as a cause of action . . . unrelated to any asserted facts" and, "[w]here facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." *Id*.

Charter Oak relies heavily on *Hartford* to argue that the damages alleged in Breland's complaint are not the result of an "occurrence" under the terms of the policy because Fairhope acted intentionally and purposefully to issue stop-work orders and enact ordinances in order to prevent Breland from filling the wetlands on his property. Charter Oak argues that, as in *Hartford*, the allegation of negligence asserted in the *Breland* action is incongruous with the facts set out in the amended complaint.

Fairhope argues that *Hartford* is distinguishable from the instant case because Breland's complaint alleges that Fairhope acted "negligently, carelessly, and unskillfully" in handling its municipal functions. In Count Five, Breland alleges that Fairhope had a duty to prudently and

properly issue permits and not to deny them baselessly or delay activity that is otherwise permitted. Breland alleges that Fairhope breached that duty by treating Breland's "obvious right to fill the Property with flippant disregard, and continuously delay[ing] and ignor[ing] Breland's right." Doc. 23-2 ¶ 68. Breland seeks money damages flowing from his "eleven-year battle" with Fairhope. *Id.* ¶ 70. Fairhope argues that these negligence allegations constitute an "occurrence" under the policy.

Fairhope cites three (3) cases in support of its argument. In the first, *Edwards Dodge, Inc. v. Pennsylvania National Mutual Casualty Insurance Co.*, 510 So. 2d 225 (Ala. 1987), the Alabama Supreme Court reversed a lower-court determination that the defendant insurance company did not have a duty to defend its policy-holder where the underlying complaint alleged fraudulent representation. Specifically, the court found that, although the insurer was not obliged to defend its insured based on plaintiff's allegations that the insured "intentionally, willfully or maliciously misrepresented" their financial arrangement, the plaintiff's alternative allegation—that the defendant represented the arrangement with "total and reckless disregard for [] truth and accuracy"—did not include the sort of intentional act precluded by the policy. *Edwards Dodge*, 510 So. 2d at 226-27. Specifically, the court determined that "a finding of 'reckless' conduct is not premised on intentional acts." *Id.* at 227. *Edwards Dodge* is not directly on point, however, because the relevant insurance policy language specifically precluded an obligation by the insurer to defend the insured in a suit or claim arising out of a "dishonest, fraudulent, criminal or malicious act, libel or slander." *Id*.

Plaintiff cites two (2) additional cases that are likewise distinguishable. In *United States Fidelity & Guaranty Co. v. Bonitz Insulation Co. of Alabama*, 424 So. 2d 569 (Ala. 1982), the Alabama Supreme Court sided with the insured in determining that a leaking roof constituted an

"occurrence" for insurance purposes where the underlying lawsuit alleged the plaintiff's roof was negligently installed. *Id*. at 571. The court stated that "the term 'accident' does not necessarily exclude human fault called negligence" and determined, as to the underlying defendant charged with negligently installing the roof, "there is no evidence that they either expected or intended the roof to start leaking." *Id*.

Similarly, in *United States Fidelity & Guaranty Co. v. National Tank & Machine Works*, 402 So. 2d 925 (Ala. 1981), the Alabama Supreme Court determined that an underlying allegation that the insured negligently or wantonly delivered the wrong product to its customer was sufficient to require a defense for an "occurrence" under the policy. *National Tank*, 402 So. 2d at 927.

These cases are off point here because the allegations of negligence they involve—installing a leaky roof and delivering the wrong product, respectively—may be considered accidental. Moreover, the parties in these cases did not allege that the damages resulting from the insured's actions were intentional. The leaky roof in *Bonitz* resulted in water damage and, in *National Tank*, the plaintiff alleged the company's negligent conduct resulted in a drowning. There is no indication that the complaint alleged the roof installer in *Bonitz* intended to cause water damage by installing a leaky roof, or that the supplier of the pool hooks in *National Tank* intended for anyone to drown.

Breland, though he charges negligence, alleges actions by Fairhope that are deliberate and intentional. The complaint alleges that, starting in 2002, Fairhope submitted letters to the Corps openly opposing Breland's proposed filling activity. Later, in 2008, Fairhope issued a series of stop-work orders to Breland instructing him to cease efforts to fill the wetlands. The purpose of a stop-work order is self-evident: to stop whatever activity is occurring. The damage alleged by Breland stems from his inability to fill the wetlands and, by extension, proceed to develop the

property. Stopping the filling of the wetlands was the intended outcome of Fairhope's stop-work orders. It was not an accidental or unforeseen result. Breland also alleges that Fairhope drafted and enacted specific ordinances in a targeted effort to thwart his development efforts. Again, he specifically alleges that the impact of Fairhope's land-use ordinances on his wetlands project was *not* accidental.

Although Breland asserts in Count Five that Fairhope acted "negligently, carelessly, and unskillfully" in carrying out its municipal functions, Breland incorporated into Count Five all of the previous allegations in the complaint, which is rife with language alleging Fairhope's actions were intentional. For example, Breland alleges that Fairhope "intentionally shelved" its 2008 land-disturbance permit indefinitely, and that Fairhope Ordinances 1313, 1363, and 1370 were "conceived, drafted, and enacted in a targeted attempt to frustrate Breland's lawful filling of the property." Doc. 23-2 ¶¶ 21, 25. Breland also alleges that Fairhope acted with "flippant disregard," Fairhope "continuously delayed and ignored Breland's right to fill the Property," and Fairhope "refus[ed] to recognize" Breland's right to fill the property. *Id*. ¶¶ 68-69. Indeed, Breland asserts that Fairhope's "conduct, from 2002 to the present date, amounts to a single sustained attempt to prevent the lawful filling of the Property." *Id*. ¶ 69. Taken as a whole, the amended complaint clearly alleges that Fairhope's actions to prevent Breland from filling the wetlands were deliberate.

Because the allegations in the complaint do not state an occurrence within the meaning of the insurance policy, the Court must look to whether facts in the record, if proved, state an occurrence. The Court finds they do not. The parties do not contest that Fairhope issued stop-work orders and enacted land-use ordinances that prevented Breland from moving forward with his development plans. Even assuming Fairhope's actions were not intended to stop Breland from filling the wetlands, the consequences of Fairhope's actions were readily foreseeable and could be

reasonably anticipated. Thus, there are no facts that could demonstrate an occurrence for purposes of insurance coverage. Accordingly, the CGL part of the insurance policies do not apply here.[5]

**(2) The PEML part**

As an initial matter, the parties agree the PEML part does not provide coverage for loss related to injunctive or other non-monetary relief. *See* Doc. 11 at 201. Thus, the issue is whether the negligence allegations raised here are contemplated within the PEML provisions. Charter Oak argues it has no duty to defend Fairhope because (1) the PEML part does not cover wrongful acts committed before the retroactive date of the policy and (2) the PEML specifically excludes from coverage "known wrongful acts."

The relevant portion of the PEML part reads as follows:

SECTION I – PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE

1. Insuring Agreement
    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of loss to which this insurance applies. We will have the right and duty to defend the insured against any claim or "suit" seeking those damages. However, we will have no duty to defend the insured against any claim or "suit" seeking damages because of loss to which this

---

[5] Charter Oak also argues that the CGL coverage is inapplicable in other respects. In light of the Court's determination that there was no "occurrence," it is unnecessary to address these arguments in detail. Briefly, however, the Court notes that, even if Breland's allegations constituted an "occurrence," the *Breland* action would not be covered under the CGL part because, as discussed *supra*, pp. 15-18, the damages to Breland already were known to Fairhope when the policies first took effect in 2011. Thus, the policy's "known loss" provision would apply. *See* Doc. 11 at 117.

Among Charter Oak's other arguments, it asserts the CGL exclusion for expected or intended injury would apply here as well, and the Court agrees. The policy excludes coverage for bodily injury or property damages "expected or intended from the standpoint of the insured." Doc. 11 at 118. For largely the same reasons the actions alleged by Breland do not constitute an "occurrence," the damages claimed by Breland were expected by the insured. However, the Court rejects Charter Oak's additional argument, that the policy does provide coverage because Breland did not allege bodily injury or property damage but seeks damages for pure economic loss. The policy defines "property damage" as "(a) Physical damage to tangible property of others, including all resulting loss of use of that property; or (b) Loss of use of tangible property of others that is not physically damaged." Doc. 11 at 116. Breland's loss of use of his property is implicated by part (b).

        insurance does not apply…
- b. This insurance applies to loss only if:
  - (1) The loss is caused by a "wrongful act" committed while conducting duties by or on behalf of you or "your boards";
  - (2) The "wrongful act" is committed within the "coverage territory";
  - (3) The "wrongful act" was not committed before the Retroactive Date shown in the Declarations of this Coverage Part or after the end of the policy period;

Doc. 11 at 199.

Additionally, the policy excludes the following:

> o. Known Wrongful Acts
> Loss arising out of any "wrongful act", including any part of "related wrongful acts", that any "described authorized person" knew about before the first date we or any of our affiliated insurance companies have continuously provided this or similar coverage to you.
>
> A "described authorized person" will be deemed to know about a "wrongful act" at the earliest time when such "described authorized person":
> (1) Reports all, or any part, of the "wrongful act" to us or any provider of other insurance;
> (2) Receives a written or verbal demand or claim for damages because of the "wrongful act"; or
> (3) Becomes aware by any other means that all, or any part, of the "wrongful act" has been committed.

*Id*. at 201. A "described authorized person" is defined as: "(a) Any of your elected or appointed officials, 'executive officers' or directors; (b) Any member of 'your boards'; or (c) Your risk manager, or any leaders of your legal, finance, risk management or other department that is responsible for insurance matters." *Id*. at 208.

      Charter Oak argues that no duty to defend exists under the policies' PEML provisions, first, because Breland alleges that Fairhope's conduct began before the insurance policies took effect. Charter Oak asserts that Breland's complaint alleges wrongful acts beginning in 2002 and continuing to the present. Because all of the wrongful acts are related, they are deemed to have occurred on the date the first wrongful act is committed. Charter Oak also argues, presumably in

the alternative, that Breland's claim against Fairhope was first made or brought when Breland filed his 2008 Complaint, which still predates the 2011 start date of the insurance policies.

Fairhope argues, in opposition, that the time of the occurrence is not when the wrongful act was committed, but when damage actually accrues. Fairhope asserts that, in this instance, the occurrence falls within the relevant coverage period because Fairhope required Breland to obtain a wetlands-disturbance permit in 2012, and Breland's loss of the use of the property flowed from that action. Fairhope asserts as further evidence that Breland subsequently filed a Notice of Claim with Fairhope and filed the underlying state court action in 2013. Fairhope asserts that those dates are the relevant ones for purposes of insurance coverage.

As an initial matter, the parties agree that the relevant retroactive date for purposes of insurance coverage is January 9, 2011. Thus, the question is whether the relevant "wrongful act" was committed before or after that date. The policy defines a "wrongful act" as "any act, error, or omission." *Id*. at 211. Under the insurance agreement, each "wrongful act" in a series of wrongful acts will be deemed to have been committed on the date the first "wrongful act" in that series was committed. *Id*. at 200. The policy defines "related wrongful acts" as two (2) or more wrongful acts that have as a common connection, tie, or link any fact, circumstance, situation, event, transaction, cause, or series of related facts, circumstances, situations, events, transactions, or causes. *Id*. at 210.

The Court finds that Fairhope's allegedly wrongful acts began well before the effective date of the insurance policies. First, Breland clearly alleges in the amended complaint that the lawsuit involves a series of actions over a period of years that prevented him from filling the wetlands on his property—indeed, the amended complaint refers to an "eleven-year battle" that allegedly began in 2002 when Fairhope filed written objections to Breland's Corps permit

application. *See* Doc. 23-2 ¶ 70. Breland received a permit at that time despite Fairhope's objections, so no injury attached at that point. Nevertheless, Fairhope issued its first stop-work order to Breland on March 27, 2008. The stop-work order precipitated precisely the event—Breland's inability to fill the wetlands—that forms the basis of the alleged injury in the *Breland* action. It also prompted an initial lawsuit by Breland in 2008, which was later voluntarily dismissed. The stop-work orders issued by Fairhope and the city's other allegedly deliberate attempts to thwart Breland's development plans—shelving Breland's permit application and revamping city ordinances—all share common facts and circumstances, and thus, are related acts for purposes of insurance coverage.

    Consequently, the allegedly wrongful act at issue here can be traced at least to March 27, 2008, when Fairhope issued the first stop-work order. Fairhope was well aware by that time of Breland's plan to fill the wetlands and had taken affirmative actions to prevent it. Thus, the alleged injury could easily be foreseen. Moreover, Breland alleges that he spent $144,000 to purchase mitigation credits and dedicated a portion of his land to conservation as part of the requirements of his 2002 permit, so the money damages he claims in his lawsuit already had begun to accrue. Accordingly, the wrongful acts alleged here predate the insurance policies, and the PEML part does not apply. For the same reasons already stated, Breland's claimed losses also would have been evident to Fairhope when it issued the first stop-work order, and thus, the "known wrongful acts" exclusion would preclude coverage as well.[6]

---

[6] Here again, Charter Oak raises additional arguments for denying coverage under the PEML part that are unnecessary to address. Briefly, however, Breland argues that the PEML part excludes coverage for "bodily injury" or "property damage" and argues that, to the extent the Court rejects its prior argument and finds Breland's claims may be considered "property damage" under the terms of the policy, they are excluded under this part. The PEML part definition of "property damage" mirrors that found in the CGL part. As the Court finds the damages alleged fall within the definition of "property damage," coverage is also excluded on that basis.

## C. Indemnification

Finally, Charter Oak argues that a determination that it has no duty to defend Fairhope in the *Breland* action is determinative of the narrower issue of whether it has a duty to indemnify Fairhope in the same action. Thus, Charter Oak argues that the indemnification issue is ripe for adjudication and seeks declaratory judgment in its favor. As noted above, the Court stayed both the issue of indemnification and Fairhope's allegation of breach of good faith pending a final outcome in the *Breland* action. *See* Doc. 3. Fairhope does not address this argument in its response. *See* Doc. 26.

As Charter Oak asserts, Alabama law "holds that an insurer's duty to defend may be broader than its duty to indemnify." *Universal Underwriters Inc. v. Stokes Chevrolet, Inc.*, 990 F. 2d 598, 605 (11th Cir. 1993) (citing *U.S. Fid. & Guar. Co. v. Armstrong,* 479 So. 2d 1164, 1168 (Ala. 1985) and *Lawler Mach. & Foundry Co. v. Pac. Indem. Ins. Co.,* 383 So. 2d 156, 157 (Ala. 1980)); *see also Evanston Ins. Co. v. Lett*, Civ. Act. No. 11-0383-WS-C, 2012 WL 4927958, at *4, 2012 U.S. Dist. LEXIS 148357, at *15 (S.D. Ala. Oct. 15, 2012) (stating that, under Alabama law, the duty to defend "is more expansive than the duty to indemnify"). "[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify." *Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011)

---

Charter Oak also asserts that the PEML part does not provide coverage for damages "first made or brought" during the policy period, arguing that Breland first brought these claims in his initial 2008 lawsuit, which was voluntarily dismissed. *See* Docs. 11 at 199, 23-4, 23-5. However, Breland seeks only declaratory and injunctive relief in that complaint. Thus, some of the claims raised in Breland's 2013 action were not first brought in the 2008 complaint. Accordingly, that argument is rejected.

(quoting *Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc.,* 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009)).

Because Charter Oak has no duty to defend Fairhope in the *Breland* action, the Court necessarily finds that the narrower issue of indemnification is also determined in Charter Oak's favor.

## V.  CONCLUSION

Based on the foregoing, the Court **GRANTS** summary judgment in favor of Charter Oak as to duty to defend and **DENIES** Fairhope's countermotion, finding Plaintiff has no duty to defend Fairhope in the *Breland* action.  The Court **LIFTS** the stay as to indemnification and **GRANTS** summary judgment in favor of Charter Oak as to indemnification, finding Charter Oak has no duty to indemnify Fairhope in the *Breland* action.

**DONE and ORDERED** this 11th day of August 2020.

/s/ Terry F. Moorer  
TERRY F. MOORER  
UNITED STATES DISTRICT JUDGE